**In the Matter of The INTERNATIONAL GOLD BULLION EXCHANGE, INC., a Florida corp., et al., Debtors.**

**Earl FAIRCLOTH, Trustee, Plaintiff,**

v.

**Robert G. LAWSON, Jr., Defendant.**

**Bankruptcy Nos. 83–00754–BKC–SMW to 83–00756–BKC–SMW. Adv. No. 85–0117–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

July 9, 1985.

See also Bkrtcy., 50 B.R. 704, Bkrtcy., 50 B.R. 708.

Stewart P. Chambers, Fort Lauderdale, Fla., for trustee.

Barbara Sanford Creegan, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause having come on before the Court on April 17, 1985, upon the Complaint of the Trustee to avoid a preferential transfer pursuant to Section 547 of the Bankruptcy Code and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does hereby

make the following Findings of Fact and Conclusions of Law.

On April 27, 1983, The International Gold Bullion Exchange, Inc. (the "Debtor"), filed its Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtor and the Defendant had entered into a contract dated October 27, 1982 for the sale and purchase of 25 one ounce gold Krugerrands. The Defendant paid the Debtor the purchase price of $10,400.00 on October 29, 1982. The Debtor issued to the Defendant a Precious Metals Certificate of Ownership on October 28, 1982.

On February 17, 1983 and March 9, 1983, after repeated demands by the Defendant, the Debtor delivered to the Defendant, respectively, 13 one ounce gold Krugerrands and 11 one ounce gold Krugerrands, together with 1 one-tenth ounce gold Krugerrand, in adjusted satisfaction of the October 27, 1982 precious metals contract.

■ The Court finds that the Complaint alleges all of the elements required under Section 547 of the Code. *Matter of Advance Glove Manufacturing Co.,* 42 B.R. 489 (Bkrtcy.E.D.Mi.1984); *In re Saco Local Development Corp.,* 30 B.R. 870 (Bkrtcy.D.Me.1983); *In re Satterla,* 15 B.R. 166 (Bkrtcy.W.D.Mi.1981). The Court finds that the Defendant received the property of the Debtor in satisfaction of antecedent debt created on October 29, 1982, and that the dates of delivery of these precious metals were within ninety (90) days next preceding the filing of the Petition by the Debtor for Chapter 11 protection, as is required under Section 547(b)(4)(A) of the Code. Additionally, the Court finds that the Defendant's receipt of these precious metals allowed the Defendant to receive more than he would have received had the Debtor filed its Petition under Chapter 7 of the Code (Liquidation) and there had been a distribution to unsecured creditors under said Chapter. The Court further finds that the Debtor was insolvent on the day of the Debtor's transfer of its precious metals to Defendant, under the presumption of insolvency under Section 547(f) of the Code, which presumption the Defendant left unrebutted.

The Court considered the following Affirmative Defenses, all others either having been abandoned or deemed to be without merit:

(1) The within action by the Trustee is barred under Section 547(c)(2) of the Code as being a transaction in the ordinary course of business;

(2) There was no transfer of the Debtor's assets by virtue of the existence of a contract of bailment as between the Debtor and the Defendant as of October 28, 1982, the date the Defendant received from the Debtor the Precious Metals Certificate of Ownership;

(3) The within action by the Trustee is barred under Section 547(c)(1) of the Code as being a contemporaneous transaction for new value;

(4) The Defendant had no knowledge of the insolvency of the Debtor on the date of the transfer of the Debtor's assets;

(5) The Defendant held, as of October 29, 1982, the date the Defendant paid the Debtor the consideration required under the precious metals contract of October 27, 1982, an equitable lien in the precious metals ultimately transferred on February 17 and March 9 of 1983.

The Court finds that the evidence and the testimony does not support the Defendant's Affirmative Defenses outlined above. Initially, the Court finds that the said transaction does not come within the purview of Section 547(c)(2) of the Code as the precious metals transfer was not within 45 days of the date the debt to the Defendant by the Debtor was incurred and, thus, was not a transaction in the ordinary course of business. The Court similarly finds that the said transaction does not come within the purview of Section 547(c)(1) of the Code. The Defendant introduced no evidence that the Debtor received anything constituting new value which enhanced the Debtor's estate and which was contemporaneously exchanged for the precious metals shipments on February 17 and March 9 of

1983. Thus, there existed no contemporaneous exchange for new value which would bar the Trustee's avoidance powers under Section 547 of the Code.

 In addressing the Affirmative Defense of bailment, a contract for bailment requires that there be an mutual agreement between the parties for a bailment and that, further, there be an actual physical delivery of the items to be bailed into the hands of the bailee. *Puritan Insurance Company v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502 (11th Cir.1983); *Blum v. Merrill Stevens Dry Dock Company*, 409 So.2d 192 (3rd Fla.App. DCA 1982); *Rudisill v. Taxi Cabs of Tampa, Inc.*, 147 So.2d 180 (2nd Fla.App. DCA 1962). The Court finds that the evidence does not support the existence of any agreement for bailment and, further, that the Debtor never possessed the precious metals purchased by the Defendant until February 17 and March 9, 1983, the dates of transfer of the subject precious metals.

The evidence similarly supports the Court's finding that an equitable lien could not and did not arise as there were no precious metals in existence, until date of shipment on February 17 and March 9 of 1983, to which such lien could attach. The Certificate of Precious Metals Ownership issued on October 28, 1982 both evidenced the Debtor's indebtedness to the Defendant and gave rise only to a contractual right in favor of the Defendant in and to the precious metals purchased on said date and not an equitable lien. As a result, the Defendant's contention that an equitable lien arose in favor of Defendant on October 29, 1982 is without merit.

Lastly, the Court finds that the value of the subject precious metals on the day they were received by the Defendant was $11,-260.52.

In summary, the Court finds that the Trustee is entitled to judgment against the Defendant for the return of the aforedescribed precious metals or, in the alternative, in the event the Defendant fails to return same within ten (10) days from the date of the Court's Final Judgment rendered herein, the Trustee shall be entitled to a Final Judgment for the value of said precious metals.